NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BETHANY SPRAGUE, *Petitioner/Appellee,*

*v.*

JOSEPH SHIPLEY, *Respondent/Appellant.*

No. 1 CA-CV 13-0347
FILED 4-3-2014

Appeal from the Superior Court in Maricopa County
No. FC 2004-090423
The Honorable Paul J. McMurdie, Judge

**VACATED**

COUNSEL

Rowley Chapman Barney & Buntrock, Ltd., Mesa
By Scott R. Rowley
*Counsel for Petitioner/Appellee*

Riggs Ellsworth & Porter, P.L.C., Mesa
By Paul C. Riggs, Spencer T. Hale
*Counsel for Respondent/Appellant*

## MEMORANDUM DECISION

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Michael J. Brown joined.

**D O W N I E,** Judge:

**¶1**         Joseph Shipley ("Father") appeals from an order of the family court adopting a parenting coordinator's recommendation regarding school attendance for one of the parties' children. For the following reasons, we vacate that order.

### FACTS AND PROCEDURAL HISTORY[1]

**¶2**         Father and Bethany Sprague ("Mother") divorced in 2005. They were awarded joint legal custody of their two minor children, J.S. and E.S. The decree also gave the parties joint decision-making authority regarding various issues, including the children's education, and required them to use the court's Conciliation Services if they could not agree. Additionally, the court appointed a family court advisor, who was authorized to "make recommendations regarding implementation, clarification, and enforcement of any custody or parenting time orders," including disputes "over school."

**¶3**         Subsequent disputes arose between the parties regarding various issues, including "[s]chool selection." The family court advisor met with the parents and made recommendations to the court about several topics, including schooling. When the family court advisor's term expired, Mother asked that she be re-appointed due to the parents' "high level of persistent conflict." In response, Father noted that "[t]he following are areas left open for judgment that have resulted in conflict: . . . EDUCATION DECISIONS."

**¶4**         In March 2012, both parties filed petitions to modify custody, parenting time, and child support. Each sought sole custody.

---

[1]     We view the facts in the light most favorable to sustaining the family court's order. *See In re Marriage of Yuro*, 192 Ariz. 568, 570, ¶ 3, 968 P.2d 1053, 1055 (App. 1998).

The court held a temporary orders hearing. The ensuing temporary order continued the award of joint legal custody and stated that if the parents could not agree about "major issues in raising the children," including "schooling issues," they should present their disputes to the court. The court set an evidentiary hearing regarding the modification petitions for October.

¶5        In August 2012, the court appointed a parenting coordinator. *See* Ariz. R. Fam. L.P. 74(A). The appointing order stated that the parenting coordinator could "make recommendations to the Court regarding all current and future disputes arising under or as a result of the custody or parenting time/visitation order as to the minor child(ren), including by way of example only, disputes over: schooling. . . ."

¶6        An evidentiary hearing on the parties' modification petitions occurred on October 29, 2012. In a ruling dated October 31, 2012, the court again awarded the parents joint legal custody. However, for the first time, the court awarded one parent — Father — final decision-making authority regarding "schooling issues," stating:

> **Decision Making Authority-** Parental decisions shall be required for major issues in raising the children and in meeting on-going needs. When they arise, each parent shall give good faith consideration to the views of the other and put forth best efforts to reach a consensus decision. If the decision involves medical or schooling issues, the parties may further elect to seek input from treating physicians or educators. Both parents shall be provided with such input. If they cannot agree, *Father shall have the ability to make the final decision.*

(Original emphasis).

¶7        In February 2013, the parties met on two occasions with the parenting coordinator to discuss where J.S. would attend middle school. Mother wanted him to attend the "feed[er]" school for his elementary school. Father preferred a charter school. In a report to the court filed March 14, 2013, the parenting coordinator acknowledged that both parents' choices were reasonable, but recommended that J.S. attend Mother's preferred school, stating:

> Both parents present valid arguments for their respective school choices. Mother's emphasis is upon providing [J.S.] with familiarity, social support, and appropriate academic

3

programming in order to facilitate academic success. Father's emphasis is upon providing [J.S.] with a more academically rigorous curriculum in the hopes of increasing the probability of success as an adult. Both parents make reasoned arguments. Parents are unable to reach consensus of this matter.

¶8 The court adopted the parenting coordinator's recommendation as an interim order that would become final on April 1, 2013, unless a written objection were filed. Father filed a timely objection, noting, *inter alia*, that he had been given final decision-making authority over education issues. The court, however, adopted the parenting coordinator's recommendation as an order of the court.

¶9 Father timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(2).

## DISCUSSION

¶10 Joint custody, now known as "joint legal decision-making," means that "both parents share decision-making and neither parent's rights or responsibilities are superior *except with respect to specified decisions as set forth by the court or the parents in the final judgment or order*." A.R.S. § 25-401(2) (emphasis added). In the case at bar, although the parties have had joint legal custody since their divorce, as of October 2012, Father was given final decision-making authority regarding educational issues if, despite good faith efforts, the parents could not agree. The order adopting the parenting coordinator's recommendation about J.S.'s school deprived Father of this authority.

¶11 The parenting coordinator expressly found that both parents' positions regarding J.S.'s school were reasonable. And the parties clearly made good faith attempts to resolve their disagreement by meeting with the parenting coordinator on two separate occasions to discuss the matter. Under these circumstances, once the parents reached an impasse, Father had the authority to make the final decision about J.S.'s school. To hold otherwise would be to vitiate the specific grant of final decision-making awarded to him, notwithstanding the reasonableness of his position.

¶12 Father's authority is not without limits. He must "put forth [his] best efforts to reach a consensus decision" before invoking his final decision-making authority. And if he makes decisions that are contrary to

the children's best interests, Mother may petition the court to modify the final decision-making order or seek other appropriate relief. Additionally, a parenting coordinator who learns of circumstances "significantly detrimental to the welfare" of a child may submit such concerns to the parties and the court. Ariz. R. Fam. L.P. 74(E). This case, though, involves no threat to a child's welfare, but parents who have divergent, yet reasonable, positions regarding a topic over which Father has been specifically granted final decision-making authority.

¶13　　　　When the parenting coordinator was appointed in August 2012, neither parent had final decision-making authority regarding educational matters. The October 31, 2012, order, though, specifically vested Father with that authority. We disagree with Mother that the portion of the October 31 order affirming "the order appointing a parenting coordinator" somehow trumps the specific delegation of final decision-making authority to Father. Nothing in the record suggests that the very specific grant of final decision-making to Father, which appears in italicized, bold font, was somehow negated by a generic admonishment that the parties comply with the previous order appointing the parenting coordinator. *Cf. City of Phx. v. Superior Court (Ariz. State Hosp.)*, 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984) (when in conflict, specific provisions control over general provisions).

¶14　　　　When the parenting coordinator recommended that J.S. attend Mother's suggested school, notwithstanding Father's reasonable alternative preference, and when the court adopted that recommendation over Father's objection, Father's final decision-making authority was nullified, notwithstanding his "valid" and "reasoned" position. As previously noted, Father's decision-making authority may be modified, if warranted, but that was not done here.

## CONCLUSION

¶15　　　　For the reasons stated, we vacate the family court's order adopting the parenting coordinator's recommendation regarding J.S.'s school. We deny Father's request for attorneys' fees incurred on appeal and for sanctions against Mother. As the prevailing party on appeal, though, Father is entitled to recover his appellate costs upon compliance with ARCAP 21. *See* A.R.S. § 12-341.

